1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ALLEN ECKARD,

                    Plaintiff,

        v.

PATRICIA THOMAS,

                    Defendant.

CASE NO. 19-cv-104-RSM-BAT

**REPORT AND RECOMMENDATION**

        Plaintiff, Gabriel Eckard, proceeds pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C § 1983. Mr. Eckard alleges defendant Patricia Thomas violated his rights under the Fourth and Fourteenth Amendment by releasing oleoresin capsicum (OC) vapor into his cell and placing him in a restraint chair after he pressed the emergency call button in his cell. Dkt. 5, at 2-7. He further alleges defendant Clinton Moll violated his Fourth and Fourteenth Amendment rights by ordering that he be placed in the restraint chair. *Id.* Mr. Eckard now moves for summary judgment against defendants Thomas and Moll arguing there is no genuine dispute of fact that their actions violated his constitutional rights, and that they are not entitled to qualified immunity. Dkt. 14. Defendants oppose the motion and ask the Court to find defendants entitled to qualified immunity. Dkt. 15. Having considered the parties' submissions, the

REPORT AND RECOMMENDATION - 1

governing law, and the balance of the record, the Court recommends that Mr. Eckard's motion for summary judgment (Dkt. 14) be DENIED.

## BACKGROUND

Mr. Eckard's complaint alleges that on December 3, 2018, while housed in the disciplinary segregation unit, he pressed the emergency call button. Dkt. 5, at 2. Upon activation of the emergency call button defendant Thomas and a team of deputies approached Mr. Eckard's cell "with the intention of removing him from his room and confining his person to a restraint chair." *Id.*, at 2-3. Mr. Eckard alleges that because use of the chair was "unlawful", he "refused to submit to restraints and comply with removal from his room." *Id.* Mr. Eckard contends defendant Thomas ordered OC vapor released into the room and thereafter Mr. Eckard complied with removal. *Id.*, at 5. Mr. Eckard alleges he was removed from his room and placed in a restraint chair and moved to a room in the observation unit. *Id.*, at 3-5. Mr. Eckard alleges that a few hours later he was removed from the restraint chair and defendant Thomas left him in the observation unit overnight. *Id.*, at 5. Mr. Eckard indicates defendant Moll told him he had approved the use of the restraint chair. *Id.*, at 3. Mr. Eckard states the next day he was assessed by the mental health counselor, determined he was not at risk for self-harm, and cleared for release from the observation unit. *Id.*

Mr. Eckard contends defendant Thomas' behavior in ordering the release of OC vapor into his cell and placing him a restraint chair violated his rights under the Fourth and Fourteenth Amendment. *Id.*, at 5-7. He alleges defendant Moll's behavior in approving use of the restraint chair violated his rights under the Fourth and Fourteenth Amendment. *Id.*

## DISCUSSION

**A.    Legal Standards**

REPORT AND RECOMMENDATION - 2

1       The Court shall grant summary judgment if the movant shows that there is no genuine

2  dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R.

3  Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence

4  of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

5  1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce

6  any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

7  absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato*

8  *Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). A nonmoving party's failure to comply with local

9  rules in opposing a motion for summary judgment does not relieve the moving party of its

10  affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v.*

11  *Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

12       "If the moving party shows the absence of a genuine issue of material fact, the non-

13  moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

14  issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex*

15  *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere

16  allegations or denials in the pleadings but must set forth specific facts showing that there exists a

17  genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

18       Factual disputes whose resolution would not affect the outcome of the suit are irrelevant

19  to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248. In other

20  words, "summary judgment should be granted where the nonmoving party fails to offer evidence

21  from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square*

22  *D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

23

REPORT AND RECOMMENDATION - 3

A pretrial inmate may bring an action for violation of his constitutional rights under 42 U.S.C. § 1983 if he can show that (1) a state actor (2) violated his constitutional rights. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

As a pretrial detainee, Mr. Eckard has the right to be free from punishment under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). The test for identifying unconstitutional punishment at the pretrial stage of a criminal proceeding requires a court to examine "whether there was an express intent to punish, or 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purposes assigned [to it].'" *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (citations omitted).

Because Mr. Eckard is a pretrial detainee, his claims for excessive force are governed by the Fourteenth Amendment, which protects pretrial detainees from the use of excessive force that amounts to punishment. *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015); *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). The Court evaluates a pretrial detainee's Fourteenth Amendment excessive force claim under an objective deliberate indifference standard. A pretrial detainee must demonstrate a defendant's acts or omissions were objectively unreasonable, and identify objective facts indicating the "challenged governmental action is not rationally related to a legitimate governmental objective, or that it is excessive in relation to that [objective]." *Kingsley*, 135 S. Ct. at 2473-74. This determination is to be made

1    keeping in mind that "[s]uch considerations are peculiarly within the province and professional

2    expertise of corrections officials, and, in the absence of substantial evidence in the record to

3    indicate that the officials have exaggerated their response to these considerations, courts should

4    ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 547-48 (internal

5    quotations and citations omitted).

6        The following considerations may bear on the reasonableness or unreasonableness of the

7    force used: (1) the relationship between the need for the use of force and the amount of force

8    used; (2) the extent of the plaintiff's injury; (3) any effort made to temper the amount of force;

9    (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the

10   officer, and (6) whether the plaintiff was actively resisting. *Kingsley*, 135 S.Ct. 2466, 2473.

11       The Supreme Court has recognized that "maintaining institutional security and preserving

12   internal order and discipline are essential goals that may require limitation or retraction of the

13   retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S.

14   at 546. The Supreme Court has further recognized that prison administrators "should be accorded

15   wide-ranging deference in the adoption and execution of policies and practices that in their

16   judgment are needed to preserve internal order and discipline and to maintain institutional

17   security." *Bell*, 441 U.S. at 547.

18   **B.    Analysis**

19       In his motion Mr. Eckard argues that defendant Thomas "believed that she needed to

20   punish plaintiff Eckard for pressing the emergency call button by confining him to the restraint

21   chair and she needed to use force to compel him to submit to that punishment by employing the

22   use of olecerium capsicum." Dkt. 14, at 4-5. Mr. Eckard argues the use of the restraint chair was

23   unlawful or excessive because he had not committed any acts of self harm or attempted suicide

1    … [nor had he] expressed self-harm or suicidal ideation to anyone prior to confinement to the

2    chair." *Id.* Mr. Eckard indicates he was not extensively injured but did suffer physical pain and

3    discomfort along with emotional distress. *Id.* He also contends no clear effort was made to

4    temper the amount of force used. *Id.*, at 5-6. He contends the security problem was not severe

5    "because plaintiff had not reported an emergency[,] the control room deputy responsible for

6    responding to emergency calls could have simply ignored the emergency call button use and

7    went on with his day." *Id.* Mr. Eckard asserts that "at no time was … [he] … actively resisting

8    the unlawful acts of the defendants." *Id.* Mr. Eckard also argues defendants are not entitled to

9    qualified immunity because they violated his clearly established constitutional rights. *Id.*

10       In response to Mr. Eckard's motion, defendants submit declarations indicating that Mr.

11   Eckard was placed in the restraint chair because he continued to press the emergency call button

12   in his cell when there was no emergency. Dkts. 14, 17. Defendant Thomas states that on the date

13   in question she responded to Mr. Eckard's module after receiving complaints from Control

14   Room Officer Delgado, who was on duty in the Central Control Room (CCR), that Mr. Eckard

15   was repeatedly pressing his cell emergency call button. Dkt. 17, at 1-3. She indicates that

16   pressing the button sends an alert to the computer in CCR that is used to control the opening of

17   security doors in the jail and that Mr. Eckard's repeated calls were accumulating in the computer

18   queue and preventing the officers from responding to requests to open doors until Mr. Eckard's

19   alerts were resolved. *Id.* She indicates the process of resolving the alerts was interfering with the

20   officers' duties to timely control movement throughout the jail and the delays also had the

21   potential to interfere with rapid response in the jail in case of a medical or security emergency,

22   placing other inmates at risk. *Id.* Defendant Thomas states that she spoke to Mr. Eckard who

23   began demanding certain hygiene items and a deck of playing cards. *Id.* She indicates she

REPORT AND RECOMMENDATION - 6

1    informed Mr. Eckard that he could not continually press the emergency button because he was

2    angry and that this was interfering with the safe and orderly operation of the jail. *Id.*

3            Defendant Thomas indicates she left the module to search for Mr. Eckard's deck of cards

4    and that before she could return she was again informed by CRO Delgado that Mr. Eckard was

5    repeatedly pushing the emergency call button, interfering with the ability to effectively control

6    movement and potentially delaying medical or security emergency rapid response. Dkt. 17, at 1-

7    3. Defendant Thomas indicates she again went to Mr. Eckard's cell and he began to yell that a

8    paper had been taken from him by another corrections deputy. *Id.* Because he was not

9    experiencing an emergency, defendant Thomas ordered Mr. Eckard to stop constantly pushing

10   his emergency call button and interfering with jail security and operations. *Id.* Defendant

11   Thomas indicates that Mr. Eckard failed to comply with her directive. *Id.* Because Mr. Eckard

12   continued to press the emergency call button, despite there being no emergency, defendant

13   Thomas states she decided to remove him from the cell and place him in a restraint chair for a

14   limited time to prevent him from disrupting Jail operations. *Id.* She states because Mr. Eckard

15   would be unable to press the emergency call button while in the restraint chair, she had him

16   moved to the Observation Unit where he could be closely monitored in case of an emergency. *Id.*

17   Defendant Thomas states she assembled a team of deputies to assist with Mr. Eckard's transfer

18   but that Mr. Eckard refused to comply with directives, including cuffing up at the cuff port. *Id.*

19   Defendant Thomas indicates she warned Mr. Eckard that she would need to use oleoresin

20   capsicum if he did not comply with directives. *Id.* When Mr. Eckard refused to comply,

21   defendant Thomas indicates she shot one short burst of OC vapor under the cell door. *Id.* She

22   states the Mr. Eckard then complied with placement in the chair with minimal amount of force.

23   *Id.*

REPORT AND RECOMMENDATION - 7

1    Based on the record before the Court, Mr. Eckard fails to show the absence of a genuine

2    issue of material fact such that he is entitled to summary judgment on his excessive force claim.

3    Defendants present evidence that their actions in placing Mr. Eckard in the restraint chair were

4    related to his continual pushing of the emergency call button in the absence of an emergency.

5    Defendants present evidence that Mr. Eckard's actions were interfering with jail officials'

6    abilities to timely control movement throughout the jail and potentially delaying rapid response

7    in the jail in case of a medical or security emergency. Defendants further present evidence that

8    Mr. Eckard was told to stop pushing the button if there was no emergency and that he was

9    interfering with orderly operation of the jail. Defendants' evidence indicates Mr. Eckard was

10   placed in the restraint chair to restore the security and orderly operation of the jail. Defendants

11   also present evidence that a small amount of OC was disbursed into Mr. Eckard's cell because he

12   refused to comply with directives, including cuffing up, when defendants sought to transfer him

13   to the restraint chair and that he had been warned the OC would be disbursed if he failed to

14   comply.

15   In sum, viewing the facts in the light most favorable to the defendants, defendants raise a

16   genuine issue of fact as to whether their actions in placing Mr. Eckard in the restraint chair and

17   releasing OC vapor were objectively reasonable in light of Mr. Eckard's repeated disruption of

18   the jail operations by continually pushing the emergency call button and preventing prison

19   officials' timely movement throughout the jail. Considering the *Kingsley* factors, and viewing the

20   facts in the light most favorable to the defendants, defendants' evidence shows (1) defendant's

21   decision to place Mr. Eckard in a restraint chair for several hours and to release OC vapor

22   appears to have been rationally connected - and a reasonable response to – Mr. Eckard's ongoing

23   disruption of jail security operations and refusal to comply with directives or cuff up in order to

1  safely secure him in the restraint chair; (2) that the extent of the Mr. Eckard's injury was

2  minimal;(3) that defendants made efforts to temper the amount of force by warning Mr. Eckard

3  repeatedly to cease his behavior prior to placing him in the restraint chair, only placing him in

4  the restraint chair for a few hours, informing him that if he did not present to cuff up or comply

5  with their directives in order to place him in the restraint chair they would release OC vapor, and

6  only releasing a small amount of OC vapor when Mr. Eckard refused to comply; (4) that the

7  security problem at issue was severe in that it was impeding jail officials' ability to control

8  movement in the jail and potentially delaying emergency response; (5) that defendants

9  reasonably perceived a threat to the orderly operations, safety and security of the jail in light of

10  the effect of Mr. Eckard's actions on their ability to control movement and respond to an

11  emergency; and (6) and that Mr. Eckard was actively resisting jail officials' directives to stop

12  pushing the emergency call button in the absence of an emergency and to cuff up or comply with

13  his placement in the restraint chair. *Kingsley*, 135 S.Ct. 2466, 2473.

14     Based on the record before the Court, Mr. Eckard fails to demonstrate the absence of a

15  genuine issue of material fact as to whether defendants' conduct violated his right to be free from

16  excessive force. Accordingly, the Court recommends that Mr. Eckard's motion for summary

17  judgment (Dkt. 14) be DENIED.

18  **C.   Qualified Immunity**

19     The Court notes that Mr. Eckard also argues defendants are not entitled to qualified

20  immunity because they violated his constitutional rights and the rights were clearly established.

21  Dkt. 14.

22     Unless plaintiff makes a two-part showing, qualified immunity shields government

23  officials from liability. The plaintiff must show both: the official(s) violated a federal statutory or

REPORT AND RECOMMENDATION - 9

1    constitutional right, and -- at the time of the alleged act or failure to act there was clearly

2    established law that defined the contours of the federal right objectively putting the official(s) on

3    notice – i.e., every reasonable official would understand that what they are doing is unlawful.

4    *Escondido v. Emmons*, 139 S.Ct. 500 (2019); *District of Columbia v. Wesby*, 138 S.Ct. 577, 589

5    (2018). When the issue of qualified immunity is raised through a motion for summary judgment,

6    "the reviewing court must assume the nonmoving party's version of the facts to be correct."

7    *Schwenk v. Hartford*, 204 F.3d 1187, 1193 n. 3 (9th Cir. 2000) (citing *Liston v. County of*

8    *Riverside*, 120 F.3d 965, 977 (9th Cir.1997)); *Munger v. City of Glasgow Police Dep't*, 227 F.3d

9    1082, 1087 (9th Cir.2000).

10          Here, accepting defendants' version of the facts to be correct, defendants' actions in

11    placing Mr. Eckard in the restraint chair were taken for the purpose of maintaining institutional

12    order and security due to Mr. Eckard's continuous pushing of the emergency call button absent

13    an emergency. Furthermore, defendants' actions in releasing a minimal amount of OC vapor into

14    Mr. Eckard's cell were taken in response to his refusal to comply with directives necessary to

15    place him in the restraint chair, including to cuff up at the cuff port. Viewing the facts in the light

16    most favorable to the defendants, defendants' actions were not taken with the express intent to

17    punish, were rationally related to a legitimate governmental objective of maintaining institutional

18    order and security, and were not excessive in relation to that objective. *See, e.g., Dalluge v.*

19    *Coates*, 341 Fed.Appx. 310 (9th Cir. 2009) (The district court properly granted summary

20    judgment on pretrial detainee's claim that use of the restraint chair for an hour violated his

21    constitutional rights finding defendants expressed legitimate security needs in light of plaintiff's

22    yelling and banging on the wall of the cell and other recent destructive behavior in cell, and

23    plaintiff adduced no evidence indicating an intent to punish him); *and see Wafer v. Nanson*, 2009

WL 423986 (W.D. Wash. Feb. 17, 2009) ("The use of pepper spray in response to a [pretrial detainee's] refusal to follow directions falls within the wide range of deference accorded prison officials in response to breaches of prison discipline."). Accordingly, the Court cannot conclude that defendants' qualified immunity defense fails as a matter of law. To the extent Mr. Eckard seeks summary judgment dismissing defendants' qualified immunity defense, the Court should deny that branch of his motion as well.

The Court also notes that, in their response to Mr. Eckard's motion, defendants argue they are entitled to qualified immunity and that the Court should dismiss Mr. Eckard's claims on this basis. However, defendants have not cross-moved for summary judgment either on this issue or on the issue of liability, nor have they served Mr. Eckard with the notice required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). Defendants state in a footnote that Mr. Eckard is not prejudiced by this because he was served a *Rand* notice in a separate case. Dkt. 15, at 9, n. 2. However, the Ninth Circuit has stressed the importance of pro se prisoners receiving a *Rand* Notice at the same time as the motion for summary judgment, and failure to provide contemporaneous notice is grounds for reversal. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012). The Court also specifically ordered defendants in this case to file a *Rand* notice concurrently with any motion for summary judgment. *See* Dkt. 13, at 3. Accordingly, the Court should decline to consider defendants' request, without prejudice, as it is not properly before the Court. Moreover, Mr. Eckard has not been properly notified of the requirements for opposing what is effectively a request by defendants for summary judgment and dismissal of Mr. Eckard's claims.

**CONCLUSION**

REPORT AND RECOMMENDATION - 11

For the foregoing reasons, the Court should DENY Mr. Eckard's motion for summary judgment (Dkt. 14) in its entirety. The Court should also deny, without prejudice, defendants' request, raised in their response to Mr. Eckard's motion, that the Court grant them summary judgment based on qualified immunity.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 28, 2019.** The Clerk should note the matter for **August 30, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **10 pages**. The failure to timely object may affect the right to appeal.

DATED this 14th day of August, 2019.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12