UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GABRIEL ALLEN ECKARD,<br><br>  Plaintiff,<br><br>  v.<br><br>PATRICIA THOMAS, et al.,<br><br>  Defendant. | CASE NO. 19-cv-104-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Gabriel Eckard, proceeds pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C § 1983. Mr. Eckard alleges defendant Patricia Thomas violated his rights under the Fourth and Fourteenth Amendment by releasing oleoresin capsicum (OC) vapor into his cell and placing him in a restraint chair after he pressed the emergency call button in his cell. Dkt. 5, at 2-7. He further alleges defendant Clinton Moll violated his Fourth and Fourteenth Amendment rights by ordering that he be placed in the restraint chair. *Id.*

The Court notes that Mr. Eckard previously moved for summary judgment against defendants Thomas and Moll arguing there is no genuine dispute of fact that their actions violated his constitutional rights, and that the defendants were not entitled to qualified immunity. Dkt. 14. Defendants opposed the motion and ask the Court to find defendants entitled to qualified immunity. Dkt. 15. In a Report and Recommendation dated August 12, 2019, this Court recommended denying Mr. Eckard's motion. Dkt. 20. This Court also recommended declining to consider defendants' request, without prejudice, that they were entitled to qualified immunity as

REPORT AND RECOMMENDATION - 1

they had not cross-moved for summary judgment, nor had they served Mr. Eckard with the notice required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). *Id.* That Report and Recommendation is currently pending before the Hon. Ricardo S. Martinez.

Defendants now move for summary judgment on the grounds that the undisputed record shows their actions did not violate Mr. Eckard's constitutional rights and, alternatively, that they are entitled to qualified immunity on his claims. Dkt. 22. Mr. Eckard filed a document entitled "response/objection" to defendants' motion for summary judgment in which he requested that defendants' motion for summary judgment be stricken as premature because the district judge had not yet adopted the Report and Recommendation recommending the denial of Mr. Eckard's summary judgment motion. Dkt. 25. Mr. Eckard also argued he should not be required to file a substantive response to defendants' motion for summary judgment until his objections to the pending Report and Recommendation had been ruled upon. *Id.*

By order dated October 17, 2019, this Court declined to strike defendants' motion for summary judgment as premature and granted Mr. Eckard an extension of time, until November 1, 2019, to file a substantive response to defendants' motion for summary judgment. Dkt. 29. Mr. Eckard failed to file a response to defendants' motion for summary judgment. However, the Court notes that embedded within Mr. Eckard's objections to the Report and Recommendation recommending that his own motion for summary judgment be denied, Mr. Eckard does appear to request the denial or continuance of defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(d). Dkt. 30. The Court will consider this as Mr. Eckard's response to defendants' motion for summary judgment and will also consider the arguments raised and evidence submitted by Mr. Eckard in his own motion for summary judgment.

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends that defendants' motion for summary judgment (Dkt. 22) be GRANTED.

## BACKGROUND

Mr. Eckard's complaint alleges that on December 3, 2018, while housed in the disciplinary segregation unit, he pressed the emergency call button. Dkt. 5, at 2. Upon activation of the emergency call button defendant Thomas and a team of deputies approached Mr. Eckard's cell "with the intention of removing him from his room and confining his person to a restraint chair." *Id.*, at 2-3. Mr. Eckard alleges that because use of the chair was "unlawful", he "refused to submit to restraints and comply with removal from his room." *Id.* Mr. Eckard contends defendant Thomas ordered oleoresin capsicum (OC) vapor released into the room and thereafter Mr. Eckard complied with removal. *Id.*, at 5. Mr. Eckard alleges he was removed from his room and placed in a restraint chair and moved to a room in the observation unit. *Id.*, at 3-5. Mr. Eckard alleges that a few hours later he was removed from the restraint chair and defendant Thomas left him in the observation unit overnight. *Id.*, at 5. Mr. Eckard indicates defendant Moll told him he had approved the use of the restraint chair. *Id.*, at 3. Mr. Eckard states the next day he was assessed by the mental health counselor, determined he was not at risk for self-harm, and cleared for release from the observation unit. *Id.*

Mr. Eckard contends defendant Thomas' behavior in ordering the release of OC vapor into his cell and placing him in a restraint chair for two hours violated his rights under the Fourth and Fourteenth Amendment. *Id.*, at 5-7. He alleges defendant Moll's behavior in approving use of the restraint chair violated his rights under the Fourth and Fourteenth Amendment. *Id.*

## DISCUSSION

A.     **Legal Standards**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248.  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

A pretrial inmate may bring an action for violation of his constitutional rights under 42 U.S.C. § 1983 if he can show that (1) a state actor (2) violated his constitutional rights. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

As a pretrial detainee, Mr. Eckard has the right to be free from punishment under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). The test for identifying unconstitutional punishment at the pretrial stage of a criminal proceeding requires a court to examine "whether there was an express intent to punish, or 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purposes assigned [to it].'" *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (citations omitted).

Because Mr. Eckard is a pretrial detainee, his claims for excessive force are governed by the Fourteenth Amendment, which protects pretrial detainees from the use of excessive force that amounts to punishment. *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015); *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). The Court evaluates a pretrial detainee's Fourteenth Amendment excessive force claim under an objective deliberate indifference standard. A pretrial detainee must demonstrate a defendant's acts or omissions were objectively unreasonable, and identify objective facts indicating the "challenged governmental action is not rationally related to a legitimate governmental objective, or that it is excessive in relation to that [objective]." *Kingsley*, 135 S. Ct. at 2473-74. This determination is to be made

REPORT AND RECOMMENDATION - 5

keeping in mind that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 547-48 (internal quotations and citations omitted).

The following considerations may bear on the reasonableness or unreasonableness of the force used: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting. *Kingsley*, 135 S.Ct. 2466, 2473.

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. The Supreme Court has further recognized that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547.

The mere use of OC spray or a restraint chair does not in and of itself constitute an excessive use of force in the prison context. Rather, the use of OC spray and a restraint chair to control disruptive inmates has been found constitutionally permissible where it is demonstrated to be a legitimate and proportional response employed to maintain institutional security and restore order. *See, e.g., Dalluge v. Coates*, 341 Fed. Appx. 310 (9th Cir. 2009) (The district court properly granted summary judgment on pretrial detainee's claim that use of the restraint chair for

an hour violated his constitutional rights finding defendants expressed legitimate security needs in light of plaintiff's yelling and banging on the wall of the cell and other recent destructive behavior in cell, and plaintiff adduced no evidence indicating an intent to punish him); *Pugh v. Evans*, No. 5:11–CT–3239–D, 2012 WL 6892816 (E.D.N.C. June 20, 2012) (No constitutional violation in placing plaintiff in restraint chair for two hours following his repeated use of the intercom system for non-emergencies); *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (use of [OC spray] in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell[.]"); *and see Wafer v. Nanson*, 2009 WL 423986 (W.D. Wash. Feb. 17, 2009) ("The use of pepper spray in response to a [pretrial detainee's] refusal to follow directions falls within the wide range of deference accorded prison officials in response to breaches of prison discipline.").

**B.    Analysis**

In support of their motion for summary judgment, defendants submit declarations stating that Mr. Eckard was placed in the restraint chair because he continued to press the emergency call button in his cell when there was no emergency. Dkts. 15, 16, 17. Defendant Thomas states that on the date in question she responded to Mr. Eckard's module after receiving complaints from Control Room Officer Delgado, who was on duty in the Central Control Room (CCR), that Mr. Eckard was repeatedly pressing his cell emergency call button. Dkt. 17, at 1-3. She indicates that pressing the button sends an alert to the computer in CCR that is used to control the opening of security doors in the jail and that Mr. Eckard's repeated calls were accumulating in the computer queue and preventing the officers from responding to requests to open doors until Mr. Eckard's alerts were resolved. *Id.* She indicates the process of resolving the alerts was interfering with the officers' duties to timely control movement throughout the jail and the delays also had

REPORT AND RECOMMENDATION - 7

the potential to interfere with rapid response in the jail in case of a medical or security emergency, placing other inmates at risk. *Id.* Defendant Thomas states that she spoke to Mr. Eckard who began demanding certain hygiene items and a deck of playing cards. *Id.* She indicates she informed Mr. Eckard that he could not continually press the emergency button because he was angry and that this was interfering with the safe and orderly operation of the jail. *Id.*

Defendant Thomas indicates she left the module to search for Mr. Eckard's deck of cards and that before she could return she was again informed by CRO Delgado that Mr. Eckard was repeatedly pushing the emergency call button, interfering with the ability to effectively control movement and potentially delaying medical or security emergency rapid response. Dkt. 17, at 1-3. Defendant Thomas indicates she again went to Mr. Eckard's cell and he began to yell that a paper had been taken from him by another corrections deputy. *Id.* Because he was not experiencing an emergency, defendant Thomas ordered Mr. Eckard to stop constantly pushing his emergency call button and interfering with jail security and operations. *Id.* Defendant Thomas indicates that Mr. Eckard failed to comply with her directive. *Id.* Because Mr. Eckard continued to press the emergency call button, despite there being no emergency, defendant Thomas states she decided to remove him from the cell and place him in a restraint chair for a limited time to prevent him from disrupting jail operations. *Id.* She states because Mr. Eckard would be unable to press the emergency call button while in the restraint chair, she had him moved to the observation unit where he could be closely monitored in case of an emergency. *Id.*

Defendant Thomas states she assembled a team of deputies to assist with Mr. Eckard's transfer but that Mr. Eckard refused to comply with directives, including cuffing up at the cuff port. *Id.* Defendant Thomas indicates she warned Mr. Eckard that she would need to use OC

REPORT AND RECOMMENDATION - 8

vapor if he did not comply with directives. *Id.* When Mr. Eckard refused to comply, defendant Thomas indicates she shot one short burst of OC vapor under the cell door. *Id.* She states that Mr. Eckard then complied with placement in the chair with minimal amount of force. *Id.*

Defendants also produce evidence in the form of an incident report submitted by defendant Thomas in which she states that during the process of being placed in the restraint chair and moved to the observation unit, Mr. Eckard repeatedly called her a "bitch" and bragged about how she was making him money because he was going to sue her. Dkt. 17, at 6-8. Defendant Thomas indicates Mr. Eckard was placed in the observation unit, a restraint chair tension check was conducted by a nurse, and she began the paperwork for the observation unit 15 minute restraint chair watch. *Id.* Defendant Thomas further states that less than two hours later she returned to the observation unit to see if Mr. Eckard would be more compliant and able to be removed from the restraint chair. *Id.* She states she informed him she was there to find out if he was willing to comply with directives and be removed from the chair. *Id.* She said she asked him whether he was going to stop his behavior and not continue to push the cell emergency call button in the observation unit cell if she removed him from the restraint chair, and when he replied affirmatively, she removed him from the chair. *Id.*

Mr. Eckard did not file a direct response to defendants' motion for summary judgment. However, embedded within Mr. Eckard's objections to this Court's Report and Recommendation recommending denial of his own motion for summary judgment, Mr. Eckard argues the Court should deny or continue defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(d). Dkt. 30. The Court will consider this argument as a response to defendants' motion for summary judgment. Fed. R. Civ. P. 56(d) provides:

REPORT AND RECOMMENDATION - 9

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer consideration of the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

On a motion pursuant to Fed. R. Civ. P. 56(d), "[t]he facts sought must be essential to the party's opposition to summary judgment […] and it must be likely that those facts will be discovered during further discovery." *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 245 (2019) (internal quotation marks and citations omitted).

Here, Mr. Eckard argues only that he "has not had the chance to conduct discovery so that he may effectively respond to defendants' motion for summary judgment." Dkt. 30. However, the August 19, 2019, discovery deadline has long since passed and even if the Court were to extend the deadline Mr. Eckard fails to make the required showing under Fed. R. Civ. P. 56(d). Specifically, Mr. Eckard fails to identify, by affidavit, any facts essential to his opposition to defendant's summary judgment motion which are likely to be discovered through further discovery. Furthermore, Mr. Eckard himself has moved for summary judgment in this matter asserting that "all evidence on record still proves there is no genuine issue of material fact[.]" Dkt. 18, at 6. Accordingly, the Court should deny Mr. Eckard's request for a continuance or denial of defendants' motion for summary judgment and consider defendants' motion on the merits.

Although Mr. Eckard failed to file a direct response to defendants' motion for summary judgment, in considering defendants' motion the Court also considers the arguments and evidence submitted in support of Mr. Eckard's own previously filed motion for summary judgment. In that prior motion, Mr. Eckard argued that defendant Thomas "believed that she

REPORT AND RECOMMENDATION - 10

1 needed to punish plaintiff Eckard for pressing the emergency call button by confining him to the
2 restraint chair and she needed to use force to compel him to submit to that punishment by
3 employing the use of olecerium capsicum." Dkt. 14, at 4-5. Mr. Eckard argued the use of the
4 restraint chair was unlawful or excessive because he had not committed any acts of self harm or
5 attempted suicide … [nor had he] expressed self-harm or suicidal ideation to anyone prior to
6 confinement to the chair." *Id.*

7 Mr. Eckard acknowledged he was not extensively injured but did suffer physical pain and
8 discomfort along with emotional distress. *Id.* He also contended no clear effort was made to
9 temper the amount of force used. *Id.*, at 5-6. He contended the security problem was not severe
10 "because plaintiff had not reported an emergency[,] the control room deputy responsible for
11 responding to emergency calls could have simply ignored the emergency call button use and
12 went on with his day." *Id.* Mr. Eckard asserted that "at no time was … [he] … actively resisting
13 the unlawful acts of the defendants." *Id.* Mr. Eckard also argued defendants are not entitled to
14 qualified immunity because they violated his clearly established constitutional rights. *Id.*

15 In his reply to his own motion for summary judgment, Mr. Eckard also argued that once
16 he was moved to the observation unit his continued placement in the restraint chair (for slightly
17 less than two hours) was unconstitutional because he could no longer disrupt jail order and
18 security by pushing the call button while he was in the observation unit. Dkt. 18. Specifically,
19 Mr. Eckard noted that the emergency call button in the observation unit only connects to the unit
20 deputy's station in that unit and not to the rest of the jail. *Id.*

21
22       **1.**      **Use of Restraint Chair**

23 Viewing the evidence in the light most favorable to Mr. Eckard, the record shows that the
defendants' use of force was objectively reasonable and did not violate Mr. Eckard's

REPORT AND RECOMMENDATION - 11

1 constitutional rights. Specifically, the undisputed record shows that defendants' actions in
2 placing Mr. Eckard in the restraint chair were in response to his continual pushing of the
3 emergency call button in the absence of an emergency. Defendants have submitted evidence that
4 Mr. Eckard's actions were interfering with jail officials' abilities to timely control movement
5 throughout the jail and potentially delaying rapid response in the jail in case of a medical or
6 security emergency. Although Mr. Eckard denies that his actions were interfering with jail
7 officials' abilities to maintain order and security, his conclusory denials and speculation that jail
8 officials could have simply ignored his pushing the emergency call button, are insufficient to
9 raise a genuine issue of material fact with respect to this issue.

10 The record shows Mr. Eckard was told to stop pushing the button if there was no
11 emergency and was told that he was interfering with the orderly operation of the jail. Mr. Eckard
12 argues that he was placed in the restraint chair to "punish him" for pushing the emergency call
13 button. However, this argument is purely speculative and insufficient without more to rebut
14 defendants' evidence that Eckard was placed in the restraint chair in order to restore the security
15 and orderly operation of the jail.

16 The record shows that after placing Mr. Eckard in the observation unit defendant Thomas
17 then returned less than two hours later and released Mr. Eckard once he agreed to stop behaving
18 disruptively by repeatedly pushing the emergency call button absent an emergency. Mr. Eckard
19 argues that once he was moved to the observation unit his continued placement in the restraint
20 chair (for slightly less than two hours) was unconstitutional because he could no longer disrupt
21 jail order and security by pushing the emergency call button while he was in the observation unit.
22 Specifically, Mr. Eckard noted that the emergency call button in the observation unit only
23

connects to the unit deputy's station in that unit and not to the rest of the jail. *Id.*[1] However, defendant Thomas could reasonably conclude that if Mr. Eckard was able to repeatedly push the call button in his observation unit cell it would be similarly disruptive to that unit's operations by inhibiting the assigned jail officials' ability to monitor other inmates in the unit even if Mr. Eckard did not have the ability to disrupt the entire jail's operations as he had done in his prior cell. And, in fact, the evidence indicates this was her concern as she asked Mr. Eckard if he would agree not to continue pushing the emergency call button in the observation unit unnecessarily and released him when he agreed.

The Court also notes that the evidence shows that in the course of being moved to the observation unit, Mr. Eckard continued to behave disruptively, repeatedly calling defendant Thomas a "bitch." The Court finds that defendant Thomas' decision to place Mr. Eckard in the restraint chair and keep him restrained for less than two hours to stop his escalating behavior and prevent ongoing disruption of jail order and security was rationally related to a legitimate governmental objective and objectively reasonable under the circumstances. *See, e.g., Dalluge*, 341 Fed. Appx. 310 (The district court properly granted summary judgment on pretrial detainee's claim that use of the restraint chair for an hour violated his constitutional rights finding defendants expressed legitimate security needs in light of plaintiff's yelling and banging on the wall of the cell and other recent destructive behavior in cell, and plaintiff adduced no evidence indicating an intent to punish him); *Pugh*, 2012 WL 6892816 (No constitutional

---

[1] Mr. Eckard also again argues the deputy monitoring the observation unit could simply have ignored his unnecessary pushing of the call button. The Court finds this argument to be unpersuasive. It is the deputy's job to monitor and the health, safety and security of the inmates in that unit. Simply ignoring or failing to investigate inmate emergency calls would risk endangering the health, safety and security of the inmates. Furthermore, it is reasonable to conclude that having to address repeated unnecessary calls from one inmate (Mr. Eckard) could interfere with that deputy's ability to address other potentially legitimate safety and security concerns arising with other inmates in the unit.

REPORT AND RECOMMENDATION - 13

violation in placing plaintiff in restraint chair for two hours following his repeated use of the intercom system for non-emergencies).

### 2. Use of OC Spray

The record also shows that a small amount of OC was disbursed into Mr. Eckard's cell because he refused to comply with directives, including cuffing up, when defendants sought to transfer him to the restraint chair and that he had been warned the OC would be disbursed if he failed to comply. Mr. Eckard does not deny that he refused to cuff up but argues only that he refused to do so because he believed use of the restraint chair was "unlawful." However, as noted above, use of the restraint chair was not unlawful under the circumstances presented. Furthermore, Mr. Eckard's own opinions regarding appropriate use of the restraint chair are insufficient to raise a genuine issue of material fact as to whether defendants acted reasonably in dispersing a small amount of OC spray when Mr. Eckard continued to push the emergency call button absent an emergency and then refused to comply with the direction to cuff up. The Court finds that defendants' use of OC spray under the circumstances presented was objectively reasonable and did not violate Mr. Eckard's constitutional rights. *See Spain*, 600 F.2d at 195 (use of [OC spray] in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell[.]"); *and see Wafer*, 2009 WL 423986 ("The use of pepper spray in response to a [pretrial detainee's] refusal to follow directions falls within the wide range of deference accorded prison officials in response to breaches of prison discipline.").

Summarizing the evidence specifically under the *Kingsley* factors, the Court finds: (1) defendant's decision to place Mr. Eckard in a restraint chair for less than two hours and to release OC vapor were rationally connected - and a reasonable response to – Mr. Eckard's ongoing disruption of jail security operations and refusal to comply with directives or cuff up in

REPORT AND RECOMMENDATION - 14

order to safely secure him in the restraint chair; (2) the extent of the Mr. Eckard's injury was minimal; (3) defendants made efforts to temper the amount of force used by warning Mr. Eckard repeatedly to cease his behavior prior to placing him in the restraint chair, only placing him in the restraint chair for a few hours and releasing him when he agreed to stop unnecessarily pushing the emergency call button, informing him that if he did not present to cuff up or comply with their directives in order to place him in the restraint chair they would release OC vapor, and only releasing a small amount of OC vapor when Mr. Eckard refused to comply; (4) the security problem at issue was severe in that it was impeding jail officials' ability to properly monitor inmates, control movement in the jail, and potentially delaying emergency response; (5) defendants reasonably perceived a threat to the orderly operations, safety and security of the jail in light of the effect of Mr. Eckard's actions on their ability to monitor inmates, control movement and respond to an emergency; and (6) and Mr. Eckard was actively resisting jail officials' directives to stop pushing the emergency call button in the absence of an emergency and to cuff up or comply with his placement in the restraint chair. *Kingsley*, 135 S.Ct. 2466, 2473. In sum, the Court finds defendants' actions in releasing OC vapor and placing Mr. Eckard in the restraint chair for less than two hours were objectively reasonable considering Mr. Eckard's repeated disruption of the jail operations by continually pushing the emergency call button.

Defendants have met their initial burden on summary judgment by presenting evidence demonstrating their actions did not violate Mr. Eckard's right to be free from excessive force. Mr. Eckard fails to raise a genuine issue of material fact to rebut defendants' showing. The record shows defendants' actions were not taken with the express intent to punish, were rationally related to a legitimate governmental objective of maintaining institutional order and security and were not

REPORT AND RECOMMENDATION - 15

excessive in relation to that objective. Accordingly, the Court recommends that defendants' motion for summary judgment (Dkt. 22) be GRANTED and Mr. Eckard's complaint be DISMISSED WITH PREJUDICE.

The Court notes that defendants also argue they are entitled to qualified immunity. Dkt. 22. Because, the record shows defendants did not violate Mr. Eckard's constitutional rights the Court need not address qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court should GRANT defendants' motion for summary judgment (Dkt. 22) in its entirety and DISMISS the complaint WITH PREJUDICE.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **December 6, 2019.** The Clerk should note the matter for **December 13, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **10 pages**. The failure to timely object may affect the right to appeal.

DATED this 22nd day of November, 2019.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16